UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:24-cv-1543

**JONATHAN DRUMMOND**,

      Plaintiff,

vs.

**BALANCED SOUL WELLNESS, LLC,**
**a Florida Limited Liability Company,**

      Defendant.

_____/

## <u>COMPLAINT</u>

Plaintiff JONATHAN DRUMMOND, by and through undersigned counsel, sues Defendant BALANCED SOUL WELLNESS, LLC, a Florida Limited Liability Company, and alleges as follows:

1.      This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Middle District of Florida.

4.      Plaintiff JONATHAN DRUMMOND is a resident of Volusia County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

1

5.      Plaintiff is, and at all relevant times, has been blind and visually disabled in that Plaintiff suffers from retinoblastoma, which is a permanent eye and medical condition that substantially and significantly impairs his vision and limits his ability to see. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.

7.      Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and/or other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word

'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

8. Defendant is a Florida Limited Liability Company authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a spa center Plaintiff intended to patronize in the near future (and as early as August and/or early September 2024), which is located at 1510 Hendricks Ave, Jacksonville, FL 32207.

9. Plaintiff's blindness limits Plaintiff in the performance of major life activities, including sight, and Plaintiff requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

10. Plaintiff frequently accesses the internet. Because Plaintiff is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

11. At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a spa under the name "Balanced Soul Wellness". "Balanced Soul Wellness" is open to the public. As the owner, operator, and/or controller of this spa, Defendant is defined as a place of "public accommodation" within the meaning of the ADA per 42 U.S.C §12181 and 28 C.F.R. §36.104.)

12. Because Defendant is a spa open to the public, each of Defendant's physical location is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7), and its implementing regulations, 28 C.F.R. Part 36.

13. Defendant also owns, controls, maintains, and/or operates an adjunct website, https://www.balancedsoulwellness.com/ (the "Website"). One of the functions of the Website is

3

to provide the public information on the location of Defendant's physical spa. Defendant also sells to the public its services through the Website, which acts as a critical point of sale for Defendant's services that is also available for purchase in, from, and through Defendant's physical location. In addition, the Website allows users to book beauty and therapeutic services online, purchase physical and electronic gift cards for use online and in the physical stores, read customer testimonials, analyze their current offers and packages customizable for various events, apply for monthly memberships, and sign up for an emailer to receive exclusive promotions, events and updates for use online and in the physical location.

14.     The Website also services Defendant's physical location by providing information on available services, partners and collaborations, events, and other information that Defendant is interested in communicating to its customers.

15.     Because the Website allows the public the ability to secure information about the location of Defendant's spa center, book beauty and therapeutic services online, purchase physical and electronic gift cards for use online and in the physical location, read customer testimonials, analyze their current offers and packages customizable for various events, apply for monthly memberships, and sign up for an emailer to receive exclusive promotions, events and updates for use online and in the physical location, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical location, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar location and business. Furthermore, the Website is a necessary service and privilege of Defendant's physical location in that, it acts as a critical point of sale for the spa center, it enables users of the Website to make purchases of Defendant's services

that is also available for purchase in, from, and through its physical location.

16.    Because the public can book beauty and therapeutic services online, purchase physical and electronic gift cards for use online and in the physical location, read customer testimonials, analyze their current offers and packages customizable for various events, apply for monthly memberships, and sign up for an emailer to receive exclusive promotions, events and updates for use online and in the physical location, the Website is an extension of, and gateway to the physical location, which is a place of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar location that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the services, privileges, and advantages afforded the non-visually disabled public both online and in the physical location.

17.    At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar location that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical location. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

18.    Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied (and as early as August and/or early September 2024), Defendant's physical location located at 1510 Hendricks Ave, Jacksonville, FL 32207, check spa hours, check service pricing, purchase physical

and electronic gift cards for use online and in the physical location, book beauty and therapeutic services online, read customer testimonials, analyze their current offers and packages customizable for various events, apply for monthly memberships, and sign up for an emailer to receive exclusive promotions, events and updates for use online and in the physical location. In the alternative, Plaintiff intends to monitor the Website in the near future (and as early as August and/or early September 2024) as a tester to ascertain whether it has been updated to interact properly with screen reader software.

19.     The opportunity to purchase physical and electronic gift cards for use online and in the physical location, book beauty and therapeutic services online, read customer testimonials, analyze their current offers and packages customizable for various events, apply for monthly memberships, and sign up for an emailer to receive exclusive promotions, events and updates for use online and in the physical location from Plaintiff's home are important and necessary accommodations for Plaintiff because traveling outside of Plaintiff's home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

20.     Like many consumers, Plaintiff accesses a number of websites at a time to help plan his wellness center visits and to compare prices, services, discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

21.     Beginning in April 2024, Plaintiff attempted on a number of occasions to utilize the Website to browse through the services and online offers to educate himself as to the services, discounts, and promotions being offered, learn about the brick-and- mortar location, check hours, and check service pricing with the intent to make a purchase through the Website or in, from, and through the physical location. Plaintiff also attempted to access and utilize the Website in his

capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

22.     Specifically, Plaintiff intended to book a spa session and visited the Defendant's Website on or about April 23, 2024, using NVDA screen-reader. As he regularly attends spa sessions as a part of his wellness routine, he decided to book an appointment through an online service. After searching for available options using the keywords "spa services in Jacksonville", he came across the Defendant's website, https://www.balancedsoulwellness.com/, offering services he was looking for, and attempted to schedule a visit. However, during the process, Plaintiff encountered significant accessibility barriers on the website that prevented him from completing the booking process.

23.     Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a.  Heading hierarchy was not properly defined, and there were missing heading levels. As a result, quick navigation through headings on the website did not help Plaintiff effectively find the content of interest and understand the logical structure of the home page;

b.  More than one heading level 1 was used per page. Heading level 1 provides important indication of what the page is about and outlines its content. Using more than one <h1> is allowed by the HTML specification, but is not considered beneficial for screen reader users. Plaintiff used keyboard shortcuts to navigate the home page but could not identify the main meaningful section due to repetitive <h1> heading levels;

c. Landmark structure was incorrectly defined. Due to repetitive "main" landmark labels, it was difficult for Plaintiff to understand the page section they led to;

d. The link "eGift Cards" led to another website and did not indicate that it was external. Plaintiff was disoriented on another website. The link text failed to warn legally blind customer about the significant change of the context;

e. Plaintiff tried to follow the links from the website and received no prior warning that the links opened new windows. As a result, Plaintiff unsuccessfully tried to use the "Back" function of the browser to go to the previous page and became disoriented;

f. The Navigation menu did not allow the repeated content to be expanded or collapsed, and it expanded automatically after receiving focus, forcing Plaintiff to tab through all the expanded elements;

g. Images of the spa center on the home page and Carousel navigation controls had inappropriate and non-descriptive names. Plaintiff could not identify the purpose of the interactive elements;

h. E-mail submission form field was not programmatically associated with its <label> element. Plaintiff did not understand the purpose of the interactive element on the page as its name was not announced;

i. Plaintiff encountered interactive images that were used as links that did not describe the content of the link target. There were no details what kind of information can be found on the destination page;

j. The Carousel region from the website did not comply with necessary accessibility standards. Thus, Plaintiff could not control the moving content on the home page;

k. "Learn More" link from the home page had ambiguous texts that was unclear to Plaintiff. Lack of detailed description of the link target and destination page made it

8

difficult for Plaintiff to perceive its purpose;

l. Prerecorded video-only found on the web page. Text transcript or audio track for a silent video was not provided and Plaintiff did not receive any information from the non-text content placed on the page;

m. The telephone number on the website was presented in plain text, and therefore was non-interactive and inaccessible to the screen reader software. As a result, Plaintiff was unable to contact customer support to clarify details about booking procedure;

n. Service categories from the website could not be focused with the Tab key. The website did not provide helpful instructions on how to access the interactive element using arrow keys.  Plaintiff did not know about the interactive element from the page and could not select a service he would like to book.

24.     Accordingly, Defendant's Website was incompatible with Plaintiff's screen reading software and keyboard.

25.     The fact that Plaintiff could not communicate with or within the Website left Plaintiff feeling excluded, frustrated, and humiliated, and gave Plaintiff a sense of isolation and segregation, as Plaintiff is unable to participate in the same online experience, with the same access to the services, special offers, and discounts, as provided at the Website and in the physical location as the non-visually disabled public.

26.     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendant's spa center located at 1510 Hendricks Ave, Jacksonville, FL 32207, and to use the Website, but Plaintiff is presently unable to do so as Plaintiff is unable to effectively communicate with Defendant due to Plaintiff's blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to

Plaintiff's blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

27.     Because of the nexus between Defendant's physical location and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical location for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar location that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical location, which are places of public accommodation subject to the requirements of the ADA.

28.     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

29.     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

30.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

33.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34.    On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35.    Defendant has not created and instituted a useful and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

36.    Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

37.    The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.2 Level AA or higher versions of web accessibility.

38.    Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's merchandise offered on the Website and in the physical stores from their homes.

39.    Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical stores in contravention of the ADA.

40.    Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

41.    The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life.  That mandate extends to internet e-commerce websites such as the Website at issue in the instant action.

42.     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

43.     Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

44.     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

45.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

46.     Notice to Defendant is not required because of Defendant's failure to cure the violations.

47.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

48.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

49.     Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

50.     Pursuant to 42 U.S.C. §12181(7), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

51.     Pursuant to 42 U.S.C. §12181(7), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's physical location, book beauty and therapeutic services online, purchase physical and electronic gift cards

for use online and in the physical location, read customer testimonials, analyze their current offers and packages customizable for various events, apply for monthly memberships, and sign up for an emailer to receive exclusive promotions, events and updates for use online and in the physical location.  The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical location. Further, the Website serves to augment Defendant's physical location by providing the public information about the spa center and by educating the public as to Defendant's available services provided through the Website and in, from, and through the physical location.

52.    Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

53.    Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

54.    In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result

in an undue burden."

55.     Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

56.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of, the goods, information, and services that Defendant has made available to the public on the Website and in the physical stores in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

57.     Further, Plaintiff has engaged an ADA website compliance expert herein, Robert D. Moody, to review Defendant's Website and confirm that the issues that Plaintiff encountered on the Website do, in fact, exist and are, in fact, barriers to accessibility for the visually-impaired. Mr. Moody's Expert Declaration is attached to this Complaint as Exhibit "A."

58.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

59.     Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

60.     There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding accurate and descriptive names to the interactive elements and ensuring that all functions can be performed using a keyboard.  Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

61.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying

access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations within the Website are ongoing.

62.   The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

63.   According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

64.   According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

65.   Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

66.   As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

67.   As a direct and proximate result of Defendant's failure to provide an ADA

compliant Website, with a nexus to its brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and its physical stores.

68.    Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

69.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a)  Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical stores through the Website.

b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical location and becoming informed of and purchasing Defendant's services, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made

16

available to the general public through the Website and in the physical location.

70.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

## COUNT II – DECLARATORY RELIEF

71.     Plaintiff re-alleges paragraphs 1 through 70 as if set forth fully herein.

72.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its physical location and Defendant's Website, which Defendant owns, operates and controls, and fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*

73.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that Defendant's Website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

---

[1]  or similar.

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a Website accessibility coordinator, a Website application accessibility policy, and providing for Website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform

all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.  An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L.  Such other and further relief as the Court deems just and equitable.


DATED:  August 23, 2024.


ALEKSANDRA KRAVETS, ESQ. P.A.
Lead Counsel for Plaintiff
1100 Buchanan Street
Hollywood, FL 33019
Phone: 347-268-9533
Email: ak@akesqpa.com

By:  ____/s/ Aleksandra Kravets, Esq.
       Aleksandra Kravets, Esq.
       FBN: 120562